The next case on our call this morning is number 108-932, People of the State of Illinois v. Dion Alexander. Just one moment, Counselor. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Charles Redfern. I'm from the Illinois Attorney General's Office on behalf of the people. We ask the Court to reverse the judgment of the appellate court and reinstate the 24-year sentence in this case. This sentence was the appropriate sentence. It was not an abuse of discretion, and therefore, it was an error by the appellate court to find to reverse that sentence and find it excessive. Today I'd like to address three points. First is the abuse of discretion standard that an appellate court or this court applies in reviewing a sentence. Second, that the trial court did not abuse its discretion in imposing a 24-year sentence because the sentence is not excessive, as it is not greatly invariant with the spirit and purpose of the law, nor is it manifestly disproportionate to the nature of the offense. And finally, I'd like to touch upon the defendant's September 3rd motion to strike a portion of the people's reply brief, which the Court has said that it will be taking with this case. First, the standard of review. It is important to note that the standard of review here is not just abuse of discretion, but it is one that gives great deference, significant deference to a trial court determination of a sentence. And the reason that there is great deference given to a trial court's determination of a sentence is that there is more than just the traditional fact-finding of weighing witness credibility and weighing the evidence. Instead, the trial court, in fashioning a sentence, must do more. The trial court must draw upon and give weight and give specific choice of what weight to give to specific sentencing factors. The trial court here had to consider not just the statutory aggravating and mitigating factors, as well as the non-statutory aggravating and mitigating factors, but the trial court also had to consider the seriousness of the offense, the need to protect society, as well as the fact of the defendant's character, including his potential for rehabilitation. And these are rather general, open-ended, qualitative considerations, including his general moral character, his mentality, his social environment, his habits, and his age. And furthermore, as this court recognizes as a reviewing court, a court on review, thus a court or the appellate court, is limited to the cold record, as courts often say, there is a cold record on review, where the sentencing judge has before him not just the individual, the defendant in person, but he gets to live with the case for several years. Here the sentencing judge had this case from pretrial through to trial to a sentencing and then a second sentencing. And he saw and was able to observe the defendant on several occasions. The defendant testified at trial. The defendant was at the first sentencing, obviously, and then the defendant spoke at the second sentencing. And so you have here a great deference given to the selection of a sentence, because ultimately it is the sentencing judge who must peer across the bench and look at the defendant and try and figure out in a need to not only rehabilitate the defendant, but also protect our society and implement the policies of the General Assembly, what is the appropriate sentence. And that is a function that is inherent to the sentencing court. So turning to the facts of this case, there is no abuse of discretion, because the sentence here, 24 years, is certainly appropriate, and it is not an abuse of discretion. And drawing upon the standard of review, we must remember that this court instructs that in reviewing the sentence, a court must cautiously and sparingly use its reviewing power. Now, again, the standard here is one of excessiveness in terms of whether the sentence is greatly invariant with the spirit and purpose of the law, or whether it is manifestly disproportionate to the nature of the offense. Now, the trial judge here found three, three statutory aggravating factors, while in contrast, zero, zero mitigating statutory factors. And the presence of an aggravating statutory factor counsels for a sentence above the mandatory minimum. And yet the appellate court believed that the mandatory minimum, six years, was the appropriate sentence here. Yet the three aggravating factors that the defendant's conduct threatens serious harm, his prior juvenile and criminal conduct, as well as the need to deter others, all counsel for the higher sentence. Counsel, why isn't the defendant's age a mitigating factor? The defendant's age is a mitigating non-statutory factor, and the judge did consider that in the sentencing. The judge specifically talked about the age. It is a factor that is not given any greater weight than any other factor. What I think, if I may, and I'm not sure, but what I think the question may be drawing upon the defendant's argument in terms of the juvenile implication, where one of the arguments that the defendant made was that if I had been adjudicated as a juvenile, I would be out by the age of 21, where here I'm facing a 24-year sentence. However, of course, the General Assembly has said that this should not be treated as a juvenile. Despite making this argument, he then recognizes, of course, he had no right to be adjudicated as a juvenile. So he's essentially, as we say, trying to create a back door to what the General Assembly has prohibited, where the General Assembly has said that he cannot be adjudicated as a juvenile. But in terms of a factor that could be argued, general age, ability to rehabilitate, that absolutely is appropriate and, in fact, was considered. And the judge said that he was considering this. And we would point to that. Then why would he have said there are no mitigating factors? The judge specifically said there were no statutory mitigating factors. And age is not a statutory mitigating factor. But in terms of the non-statutory factor, the judge pointed out and said and presented this question, this inherently factual determination that is unique to the sentencing court of saying I see a young man before me who, if I think I can give him another chance and he will take advantage of another chance, I'm willing to give him another chance to turn his life around. But on the other hand, if he is not going to take advantage of another chance, I am not willing to give him another chance. And this is one of the pieces, this gets to the second statutory aggravating factor of his prior conduct, where the judge saw that the defendant had been given a second and third and So why is it important or improper for the trial court to consider the location of the shooting at all? Because it's like shooting five shots into a crowded hallway at school because only one shot is needed for class X enhancement. If may I ask, is it appropriate or not appropriate? Why is it improper? It was a problem in the first sentencing to use the double enhancement. And we do not dispute about the fact that it was appropriate for a remand for the first sentence. So what had happened is that we had originally a double enhancement problem of to enhance from a class I felony to a class X felony here, which is what occurred. That is due to the fact that the shooting occurred in a school. But you only need one shot. Exactly. You beat me to the second point. The fact that it was not just one shot. And that illustrates, to have a class X felony here, you have the General Assembly in the statute explicitly states any time, any day. So it can be at midnight on New Year's Eve in an otherwise empty school, as long as there is one shot in another individual. In fact, it can happen in a school event. It doesn't even happen on school grounds. It can happen within 1,000 feet of the school. One of the cases we cite in our brief is a drive-by shooting where someone shoots at a private home across the street at 930 in the evening. In that case, there was that automatically gets the class X enhancement. And then the judge, as Your Honor correctly recognizes, the judge realized that there's much more. And if I may, we can start putting in the additional facts that show there's significant conduct above and beyond what is necessary for the mandatory six-year minimum. So instead of the middle of the night on New Year's Eve in an empty school shooting one shot, we're here in a school day. And it's not just a school day when the students are in class, but specifically it is between the passing period between first and second period. So the students are not in the classrooms. The students are in the hallway. And also the defendant confronted Porter, had two shots off during the struggle, but then he specifically chased after Porter. And when he chased after Porter, there were students, teachers, and administrators in that hallway. And to illustrate this, not only did he chase after Porter, but he shot in a rather indiscriminate way. There is evidence that there's bullet fragments in the floor, in the walls, and in a door frame, as well as in the ceiling. There is evidence of shots in a stairwell. The students are fleeing at this point. There's testimony that the teachers are pulling students out of the way, and yet you have gunfire that goes to the floor, to the wall, to the ceiling. The defendant is very fortunate in this case. The judge talked about this. The defendant is very fortunate that he is not facing a murder charge and a much longer sentence. And one of the defendant's arguments is, well, I didn't actually physically hit anyone. Well, he got the benefit of the fact he didn't physically hit anyone by the fact he's not facing a murder charge today. But is that relevant? Is that part of mitigating factors? Yes, absolutely. And that was something, again, the judge considered. Again, everything is fair game in terms of mitigating or aggravating factors. But is the seriousness of the offense, does that offer or carry greater weight than any other aggravating or mitigating factors? The seriousness of the offense. The seriousness of the offense is, I don't believe any, every factor can, no, there's not one factor. More weight than the other? Every factor. And, for example, rehabilitation potential is not, you know, he talks about his rehabilitation potential and says that should be one. And the court does not say, specifically says that no one factor should be weighted to any greater strength. Now, what I would point out, Your Honor, is that what should be pointed out is the fact that there are statutory aggravating factors and there are no mitigating factors. And we're sort of jumping through. And if I may back up for a second, in the sentencing process, a judge should first consider the sentencing range. Here it's six to 30 years. So the judge has to impose a sentence within that six to 30-year range. Then the judge is required to determine the statutory aggravating and mitigating factors. Here there are three aggravating statutory factors and zero mitigating factors. So that automatically counsels for a higher sentence because there are three aggravating factors. And those, Your Honor ---- Aside from those factors that are listed, we have Rule 615B4, which gives the reviewing court the power to modify and reduce a criminal sentence imposed by a trial judge. We have a case that's still standing out, People v. Jones, that says that a trial judge's sentencing decision that is within the permissible statutory range, a court review must determine whether the trial court abuses discretion in sentencing the defendant as it did. How do you explain, Jones, our rule? Well, the rule, in terms of the rule, Your Honor, is correct, that ultimately there is some level of review of the ultimate reasonableness of the sentence. So if the sentence is outside the range, then it's improper. But a sentence withinside the range, the question then is, does the judge properly consider all the factors, which the judge did here. And then there is this ultimate level of substantive review, which is a very cautious ---- The rule doesn't mention outside of the range. Well, the purpose of the ---- The point is that I was trying to give an example of somewhere where if a sentence is unlawful, the point of the rule is if the sentence is unlawful in some way or it's an abuse of discretion in some way, the court does have the ability to correct the sentence. So, for example, I believe in Jones there was a case where there was an error and the court then said, should we remand for a new sentencing or should we impose a new sentence on ourself? The court, if it finds that there is some type of error, then this court under 615B does have the discretion, 615B-4, does have discretion to impose a new sentence based on the record or to remand. But the predicate to that, Your Honor, is a question of whether there is an error in the sentence in the first place. Here, since the defendant is saying it is excessive, the defendant must first demonstrate under an abuse of discretion standard, a rather deferential abuse of discretion standard, that it was an error in imposing the sentence. So the first question for the court, Your Honor, would be, is the sentence, the 24-year sentence, an error? And as we've been talking about with these factors, where the court has said it's not its role to reweigh the factors as a first instance sentencing court, but as a reviewing court, the first question must be, is the 24-year sentence an abuse of discretion? If it is, then we get to 615B-4. That's where 615B-4 comes in. In the cases where the court has reviewed under 615B-4, the court finds the error first. Finally, Your Honors, one additional fact I just want to point out here, before turning to the arguments of the defendant, is the judge specifically pointed out that this is a very serious offense. And the defendant, who had had a several number of prior adjudications as a juvenile, had, using the words of the judge, graduated to the big leagues, which is unfortunately a common phrase sometimes you hear, that this is not a first offense or a minor offense, but instead he had graduated to the big leagues, that this is something where the judge is very serious about this case, and therefore the need for a significant sentence is appropriate. Finally, Your Honors, the appellate court and the defendant make great emphasis of the mitigating non-statutory factors, so the non-statutory mitigating factors. But what is important to recognize is that the trial judge considered these factors. And again, getting back to the court's review here, the review is whether the trial judge ultimately did his job. And he did. He did do his job. He considered the statutory aggravating factors, determined there are no statutory mitigating factors, and then considered any non-statutory aggravating and mitigating arguments from the parties. And he considered and heard in the PSR testimony from the family, from a family member, Dolores Kings. He heard mitigating arguments in terms of the defense counsel. He heard from the defendant in terms of a letter. And there were a number of letters. There was a letter from the defendant's mother, from an older sister, from a minister, from a family friend. And the judge actually in a colloquy at the second sentencing asked the defendant about his letter and asked him where the defendant had apologized since he had learned from his lessons, asked him what he meant about that. So the judge certainly heard the mitigating arguments. The judge, in fact, talked about how the defendant had a difficult background. He did not come from the best family situation. And again, getting back to this point of saying, if I think this is a young man who will learn from his lessons, then I'm willing to give him a shorter sentence. But ultimately determining he is a young man who did not learn from his prior mistakes and did not take advantage of them. And to illustrate, every time that he was adjudicated in a court, in a juvenile or in a criminal case, he then continued with another violation. He stole a car when he was 13, put on probation, and then he was arrested again when he was at a drug raid at his mother's home. And then when he was on probation for that as a juvenile under supervision for that drug raid, he then committed the Woodruff shooting. So the fact that he was on some type of court supervision did not deter him from the Woodruff shooting. And then when he was in the juvenile detention facility for over a year, waiting for trial and going through trial, when you would think that he would be on his best behavior, if he believed that this was a serious offense, you would think that he would not be solving his problems through violence. Yet the judge recognized that he got into approximately a dozen disputes where he fought with people. Before your time is up, I am interested in the whole whether we can consider the MSR in your reply brief. The indictment? Yes. Yes, you can consider the indictment. And it's for the purpose of if you find that the sentence is excessive, then the question is should you exercise your power, getting back to Justice Freeman's question, your power under 615B4 or whether to remand for a new sentence. The indictments would go to the question of at a new sentence, those would be relevant in a new sentence. We are not arguing that those go to the question, the first question of whether the sentence is excessive or not, because obviously those indictments were not present in 2008. We are arguing that they go to the second question of should there be a remand, but of course we say you don't get there because the sentence of 24 years is appropriate and should be affirmed. And that's how you address the defendant's argument that we can't take judicial notice, except in the proceeding before us? In terms of that second point, we just disagree about judicial notice. My understanding of his argument is that judicial notice is limited to documents that are already in the record, but that would defeat the purpose of judicial notice because if it's in the record, then you don't need to take judicial notice of it. And ultimately, in terms of judicial notice in all of this, this is very much a tempest in a teapot. We wanted the court to be aware of the most current information, but in terms of we think the sentence is appropriate, it should be 24 years, you shouldn't get to the question of a remand, and if you think we should, that you can't take judicial notice, we would ask to supplement the record because the indictments just came out a few months ago. And they were two separate shootings? They were two separate shootings. I spoke, again, my understanding is he's scheduled to go to trial next week on these two cases. We would ask the court to reverse the judgment of the appellate court and reinstate the 24-year sentence  and the appellate court's decision to the contrary was incorrect. Thank you, Your Honors. Good morning. May it please the Court, I am Jay Wigman, an attorney for Defendant Appley Dion Alexander, who asserts that the imposition of a 24-year sentence upon a 15-year-old who had never before been incarcerated was an abuse of discretion, largely because it failed to consider the teachings of two recent U.S. Supreme Court cases, that being Roper v. Simmons and Florida v. Graham. And it was recently reiterated in Graham when Chief Justice Roberts in concurrence described Simmons as applying a general presumption of diminished culpability to juveniles. I would also note that in his concurrence Chief Justice Roberts stated that this concern or this consideration is pertinent beyond capital cases and shouldn't be limited just to those considerations, given that Roper v. Simmons was a capital case. The primary reason that there has become this new focus on the consideration of a juvenile's age, and the defendant in this case was 15 years old at the time of the commission of the offense. The primary reason is a recognition in the courts of what, as Simmons stated, parents have always known, that children are different from adults. And they're different for three primary reasons, and these were discussed at great length in Simmons and utilized again in Graham. The primary difference is the level of maturity, and it leads to a recklessness, it leads to ill-thought decisions and actions as occurred in this case. The second issue is the susceptibility to influence, and especially to negative influences. And part of what concerns the trial court in this situation was the defendant's continued association with other juveniles who had committed offenses, who had helped him commit offenses, whom he had joined with. Also the fact that there was an absence of any sort of adult leadership provided for this minor. His mother at the time was on probation herself for an aggravated battery. He had one brother who was already in the Department of Corrections. At the time of the first sentencing hearing, he didn't know how to contact his parents. The third difference between juveniles and adults that augurs for a lesser sentence to be provided, if you're comparing apples to apples to an adult, is that a defendant generally has an undeveloped character. In fact, the brain structure is different and still developing even past the age of 18. And this helps to explain why when the court looks at offenses that the juvenile committed when he was 12 and 13 and 14 years old and didn't apparently learn from his mistakes, is because children are still in the process of learning how to learn from their mistakes. And when the trial court points out that the defendant was on probation prior to the commission of the last offense and didn't seem to learn from that, didn't seem to begin to act responsibly when most people would be on their best behavior, knowing that this may be their last chance, it just goes to show that juveniles don't engage in the same type of cost-benefit analysis that adults do when considering this type of factor. Would that factor be lessened if we disagree with you with respect to whether or not we look at what happened in 2010? How old is he now? The defendant is now 21. Twenty-one. And so if we disagree with you, what, if anything, does the fact that he's indicted for two separate shootings in 2010 say about the fact that he appreciates his conduct? He's now 21 when these were committed. And this was a situation that was discussed in Graham, where the defendant, in fact, was on probation and then committed another offense, and the sentence, as I recall, was actually for the underlying offense that had placed him on probation in the first place. And the court talked about the second chances that he had been given and the development. And I would note that that defendant was 17 years old at the time of the offense. And what was said in Graham was that even if the state's judgment that the defendant was incorrigible or later corroborated by prison misbehavior or failure to mature, the sentence was still disproportionate because that judgment was made at the outset. It's a question then about the timing and not later being proved right. This isn't a case that can be viewed in 20-20 hindsight. So even were, and again I'll address later, the impropriety of the inclusion of that offense, even were that offense to be considered, it doesn't impact upon the question of whether the trial court abused its discretion based on the facts and the factors that it had before it at the time of the sentencing. The three differences between juveniles and adults must be considered in view of the four penological goals or primarily the four goals and purposes of incarceration in determining the length of a proper incarceration term. The first of those is retribution. And this leads into the second consideration or the second goal, which is deterrence. Where the question is one of culpability, retribution is lesser if the culpability is lesser. And again, the primary teaching of Simmons is that there is a general presumption of diminished culpability. Punishment isn't as appropriate for somebody who isn't as culpable. And that then leads to the second question of whether deterrence is going to be effective. And for the same reason that a defendant is less culpable and for the same reason that a defendant has a lesser sense of the impact of deterrence is much less likely to have any impact on a defendant or in this case the primary audience that you're looking at are children in school. The next question then becomes one of incapacitation. And the question there is how long is it appropriate to take an offender out of society in general? The question or the indication there being that again, incapacitation is not met by an overly long term because of the age, the development of the child, the development through the age of 18 and even beyond that. And then that leads to the last factor, which is rehabilitation. And rehabilitation is what was emphasized before the trial court. But these other factors must be considered as well as is shown by the decisions again of Simmons v. Roper and Florida v. Graham. And all of these factors then when looked at in that context help to explain how the trial court abused its discretion when he considered the three aggravating factors or the manner in which he considered the three aggravating factors of the seriousness of the record of the defendant. And I would note that while it is true that the trial court made comments about the defendant's age, those comments tend to show that in fact he did not consider the age in the fashion that I'm urging this court to do so and has been called for in Simmons v. Roper and Florida v. Graham. And that is that the trial court said that he considered age to go both against the defendant and in the defendant's favor. At page 780 of the record in the first sentencing hearing, the trial court said it goes both ways in my mind. I'm fearful, the court said, and I'm paraphrasing at this stage, that we get too many kids, and he used the phrase again, who get to the big leagues and I think they're unprepared to go out into society. And what that seems to require is that the defendant at the age of 15 or at the age of 17 already have developed these character traits that clearly aren't available to a juvenile as they are to an adult. It's requiring that the defendant have rehabilitated himself, have learned his lesson when he was 12 and when he was 13 and when he was 14. Despite the fact that he lived in an absence of a responsible parenting or adult role models to assist him in learning and navigating the system. And so it's in this way that the trial court abused its discretion and it's in this way that the sentence is manifestly disproportionate to the seriousness of the offense. And in considering the seriousness of the offense, it's not inappropriate for this court to consider the degree of harm that occurred. If there are no further questions regarding the substance, then I would like to address the insertion by the state into its reply brief of matters that are outside of the record. Specifically what occurred is there is an offense alleged to have occurred approximately two months ago. And the indictment was placed by the state into its reply brief. Purportedly as proof that the defendant is not rehabilitatable. And the first matter that I would bring to the court's attention as is very clear, an indictment is not proof. It is not proof of anything. It is not proof of the commission of the offense. It is the first thing that a trial judge tells to the jury. The indictment is not proof of anything. It is merely a charge. The mere charge in this instance cannot be used as proof of the defendant's lack of rehabilitation, particularly given the facts of the case simply as indicated by the indictment. There were others who were charged. Defendant was a co-defendant. The level of culpability in this case or involvement cannot be established but can be overemphasized and can prejudice the defendant when the fact of a mere charge is brought into the question. I would also note that it is. No evidence of the prior offenses, is that correct? I'm sorry, that's what? No evidence of the prior offenses, just the fact of the indictment. All that was brought in, all that was placed in the appendix was the fact of the indictment. Were there other evidence before the trial court, then that certainly can be considered. So it's a mischaracterization to say that I'm claiming that any sort of evidence can't be provided. But the indictment itself is not evidence, but is merely a charge. And it is for that reason that we object to its insertion. What about what your opponent said, which is that it was only inserted for purposes if the court found that the sentence below was an abuse of discretion. As to whether we ought to remand it or whether we ought to just set a sentence? It would be more appropriate. Does it have any relevance to that? I'm sorry, what? Does it have any relevance to that or not? Well, it doesn't have any relevance to the extent that the question before this court, well, and you're a step ahead of that. The question for this court at this stage is whether there was abuse of discretion. Exactly. Then the second question becomes, I'm not sure that the question then becomes whether the appellate court's decision was appropriate, it was appropriate at the time, or the appellate court's decision was appropriate at the time that it was evaluating. And because this does not have any bearing on that determination, or the sentence that was appropriate for a juvenile, again, as was stated in Graham, the fact that maybe later proof bears out that the defendant was incorrigible does not demonstrate that the sentence was disproportionate to the offense. And so given the defendant's character, given that this is a juvenile, given that the question is whether the trial court abused its discretion, what is most appropriate and what we're asking of this court is for affirmance of the appellate court's decision. Let me ask you this. Is it true that if the state was allowed to use this as aggravation, that they would have forfeited their right to proceed on those charges, those charges that were offered? I'm not sure that I understand the question. When you offer an aggravation, another offense, don't you forfeit the right to prosecute that other offense? I'm not sure. I don't know how to answer that question. Going back to Justice Garvin's question, I understand your point that the indictment with the two shootings in 2010 does not come into play with respect to determining whether the appellate court abused their discretion in lowering the sentence from 24 years to 6 years. If we did determine that they abused their discretion and eliminated it to 6 years or lowered it to 6 years, do the new indictments come into play if we were going to set a sentence? If you were to set a sentence, I don't believe so, because the indictment itself is not something that could be used by the trial court. If this were at the stage of a trial court sentencing, the mere indictment itself would not be usable by the trial court. To the extent of whether other proof could be brought in, that's a different question. But what was brought up here was merely the indictment, and it's not proof of the charge. If there are no further questions, then I would ask that this Court affirm the appellate court given that the sentence that was imposed was a great variance with the spirit and purpose of the law and manifestly disproportionate to the nature of the offense. Thank you. First, in response to the argument involving Graham v. Florida and the various policy arguments that come out of Graham v. Florida, the defendant takes issue with the trial court not engaging in an argument in accordance with Graham v. Florida, yet Graham v. Florida was decided in 2010. The first sentencing was in 2006. The second sentencing was in 2008. Second, in terms of the specific issue in Graham v. Florida, it should be remembered that Graham v. Florida was an Eighth Amendment cruel and unusual punishment claim. This is not a cruel and unusual punishment argument here. The defendant's claim is one of an excessive sentence under Article I, Section 11 of the Illinois Constitution. He is not arguing a cruel and unusual punishment claim, and Graham v. Florida is that. Mr. Redford, is it your position that the abuse of discretion comes that in the appellate court, lowering the sentence from 24 years to the minimum, right, six years, that they could not have taken into account any of the aggravating factors? Is that where the abuse came? The error, if I may say the error, and abuse of discretion would be the standard that the appellate court used in reviewing the trial court sentence. They had to find an abuse of discretion. Right. Then they crafted their own sentence saying 24 years, and a 24-year sentence would be an abuse in terms of this court reviewing a six-year sentence, because their sentence would, as you are correct, would only be considering the mitigating non-statutory factors without considering any of the aggravating factors. And furthermore, it is an error because the appellate court is replacing its judgment in terms of how to weigh the sentencing factors in place of the trial court. It is not appropriate for a reviewing court to come up with a sentence that it thinks is appropriate based on an individual review of the record. In our standard review of the appellate court? Your Honor actually reviews down to the trial court here in terms of whether the 24-year sentence is appropriate or not. So really we're looking at it instead of from the appellate court perspective, rather whether the trial court did abuse their discretion and whether the appellate court was wrong in indicating the same. Yes. Yes. And to the extent that the defendant follows the appellate court reasoning, which is much of what he did, it shows that reasoning of the appellate court as well as the defendant's argument here does not demonstrate an abuse of discretion, and then also that the six-year we don't get to that second point of the six-year sentence. If I can return back to Graham v. Florida for a second, the U.S. Supreme Court case that raises an Eighth Amendment constitutional challenge, in Graham it was an individual, a juvenile who had been sentenced to life without the possibility of parole. And here you have an individual who is sentenced to a term of fixed years, 24 years, and has the ability to earn good conduct credit. In fact, he was sentenced before a change in the good conduct law, so he gets day-for-day opportunity. I know there's some question about that where later it was changed, but he has the opportunity to earn day-for-day. Graham was concerned, and the concern of Graham of whether it was a cruel and unusual punishment, so all of those policy concerns that the defendant argued about deals with an individual where we lock up the individual and throw away the key and never allow the juvenile ever to have an opportunity to get out of jail. Furthermore, in fact, Graham has language in it where it talks about how the death penalty is the most serious punishment that the state can impose. Life without possibility of parole is considered the second most serious. Here, of course, we are far from life without possibility of parole. We're talking about 24 years or the argument of six versus 24 versus the ability to earn good conduct credit. So clearly Graham is far from point in this case. And to illustrate another point, to turn to the actual sentencing, the defendant, if your Honor, would focus on the defendant's arguments in terms of, well, juveniles haven't developed their ability to tell right from wrong or things of that nature, the judge not only considered that, but specifically rejected this line of argument. He talked about how he wanted to recognize, and I'm specifically referencing C825, the judge's second sentencing, where he said, I want to recognize the students who came here and testified very respectfully, very politely, very well spoken to make sure, in my mind, as it turns out, justice occurred in this case. Young people can do good things. Young people can tell right from wrong. Fifteen-year-olds can tell right from wrong. But furthermore, whether a 15-year-old can tell right from wrong or not is not the question for this court. The question for this court is whether the trial judge did his job. He considered age. Age was talked about specifically on page C814, where the defense counsel said, judge, I want to talk about how this happened when he was 15 years old and that age should be considered. And so the judge was presented with age, and the judge said, I think that young people can do good things. I think that this young man does need to be deterred. So this argument about, well, it's impossible to impose a sentence, a long sentence on a young man, was rejected by the judge. And, in fact, the General Assembly has rejected this argument. What the defendant seems to be suggesting is he's going back to his argument of that young people, in essence, should only get the sentence that they would get as a juvenile, get up to the age of 21. But the General Assembly specifically sets forth the policy that there can be a sentence of six to 30 years in this case. And the General Assembly has said that a young person should be treated as an adult in certain situations, like in this case. And what you would end up doing is you would end up rejecting the, giving the mandatory minimum requirement here, if you say, well, he should only get to the age of 21. Getting back to the indictment issue, most importantly, we are saying the indictment goes to the second question of, if there is an, if there is an abuse of discretion, should there be a remand or not? And absolutely the indictment can be considered in terms of the fact, and we put in our motion, the state has the opportunity to bring in subsequent events. The state would have to prove it through live testimony. What we are trying to do, and I want to make this clear, because I think the parties are not lining up here, we are simply alerting the court to these subsequent indictments, and the fact of if the court finds an abuse of discretion, which we say it shouldn't, but if it did, the question then becomes, should this court fashion a new sentence, or should the court remand for an additional proceeding where the state would have the opportunity to consider that? And the state absolutely has the opportunity to consider all relevant evidence at the time of the sentencing. That occurred in this case. The defendant was, had a first sentencing in 2006. He was remanded. A new pre-sentence investigation report and new evidence came in. For example, the defendant says you're limited to the evidence at the time of a certain decision. If that was the case, the defendant wouldn't have been able to provide a letter and statements to the court in 2008. He had the opportunity to provide new additional mitigating evidence and arguments at the second sentencing. So the general rule, which he has availed himself of, is the ability to always bring in new evidence at a remand that is relevant. Again, we are simply asking, alerting the court of this new fact that would go to the secondary question of if there should be a remand. Unless the court has any additional questions, we would ask the court to reverse the appellate court and reinstate the defendant's 24-year sentence. Thank you. Thank you. Marshall, case number 108-932.